THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 2:11-cv-00991 |
| KOSS CORPORATION and MICHAEL J. KOSS, | ) ) ) ) | |
| Defendants. | ) | |

# PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM IN RESPONSE TO QUESTIONS POSED BY THE COURT REGARDING PROPOSED SETTLEMENT

Andrea R. Wood
James A. Davidson
Attorneys for Plaintiff
U.S. Securities and Exchange Commission
175 W. Jackson Blvd., Suite 900
Chicago, Illinois 60604
Telephone: (312) 353-7390
Fax: (312) 353-7398
E-mail: wooda@sec.gov
E-mail: davidsonj@sec.gov

# INTRODUCTION

The Securities and Exchange Commission ("SEC" or "Commission") respectfully submits this Memorandum in response to the questions posed in the Court's December 20, 2011 letter regarding the proposed settlement of this action. In the December 20, 2011 letter, the Court asked the Commission to provide a written factual predicate for why it believes the proposed consent judgments as to defendants Koss Corporation ("Koss") and Michael J. Koss ("MJK") to be fair, reasonable, adequate and in the public interest. In particular, the Court asked the Commission to address three specific areas of concern for the Court. First, the Court asked the Commission to discuss whether the proposed consent judgments comply with Rule 65(d) of the Federal Rules of Civil Procedure, which requires an injunction to state its terms specifically and to describe in reasonable detail the act or acts restrained. Second, the Court requested that the Commission provide a factual predicate establishing the adequacy of the provision in the proposed consent judgment as to MJK requiring him to reimburse Koss for certain bonus and incentive-based compensation pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley"). And third, the Court asked the Commission to address whether the proposed consent judgments may properly be considered "final judgments."

As detailed below, the proposed consent judgments satisfy the requirements for injunctive relief and final judgments and, in the case of MJK, impose appropriate monetary relief consistent with the requirements of Section 304(a) of Sarbanes-Oxley. The proposed settlement as a whole fairly reflects the scope of relief likely to be obtained by the Commission if successful at a trial on the merits, taking into account the remedial measures already undertaken by the defendants, the litigation risks likely to be presented, the benefits to each of the parties of avoiding those risks, the willingness of Koss and MJK to consent to judgments and not deny

liability, the Commission's interest in detailing publicly the facts that led it to pursue this action and the public's interest in knowing those facts. The relief contemplated by the proposed consent judgments is fair, reasonable, adequate and in the public interest.[1] Accordingly, the Commission respectfully submits that the Court should enter the proposed consent judgments.

## BACKGROUND

I.  **Sachdeva's Embezzlement From Koss.**

From 2005 through 2009, Sujata Sachdeva ("Sachdeva"), Koss's former Principal Accounting Officer, Secretary, and Vice-President of Finance, with the assistance of Julie Mulvaney, Koss's former Senior Accountant, embezzled approximately $34 million from Koss using numerous fraudulent wire transfers, cashier's checks, and petty cash withdrawals, most of which Sachdeva spent on lavish shopping sprees.[2] On July 27, 2010, Sachdeva pled guilty in a criminal proceeding to federal wire fraud charges. (*See* United *States v. Sachdeva*, Case No. 10-cr-006 (E.D. Wis.), Change of Plea Minutes, Doc. No. 31 (Ex. A)) In her Plea Agreement, Sachdeva admitted that she had "fraudulently authorized and directed the issuance of more than 500 cashier's checks totaling approximately $17.5 million" to pay personal expenses and that she had "fraudulently authorized 206 wire transfers totaling more than $16 million from Koss'

---

[1] To approve the proposed consent judgments, the Court must only find that the judgments are fair, adequate and reasonable. *See SEC v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984) (providing standard of review and further noting that "courts should pay deference to the judgment of the government agency which has negotiated and submitted the proposed judgment"). The Commission respectfully submits that the district court in *SEC v. Citigroup Global Mkt.*, 2011 WL 5903733 (S.D.N.Y. Nov. 28, 2011), erred in adding a requirement that a reviewing court also find such judgments to be in the public interest. *See id.* at *2-*3. Nonetheless, in this case, the proposed consent judgments are in the public interest, as well as being fair, adequate and reasonable, and therefore satisfy the *Citigroup* standard.

[2] In a related action, the Commission charged Sachdeva and Mulvaney with violations of the antifraud, books and records, and internal controls provisions of the Securities Exchange Act of 1934. (*See SEC v. Sujata Sachdeva and Julie Mulvaney*, Case No. 10-cv-747 (E.D. Wis.)). The Court entered a Final Judgment by consent against Sachdeva on January 11, 2011. On November 4, 2011, the Commission and Mulvaney informed the Court that they had reached an agreement in principle to settle the claims against Mulvaney, subject to Commission approval and completion of the settlement documentation. On November 7, 2011, the Court issued an order approving the parties' joint motion to stay discovery pending completion of the settlement.

operating accounts to American Express to pay for personal expenses." (*United States v. Sachdeva*, Case No. 10-cr-006 (E.D. Wis.), Plea Agreement ¶ 5, Doc. No. 29 (Ex. B)). She also admitted that, "[t]o conceal her fraud, Sachdeva made, and directed other Koss employees to make, numerous fraudulent entries in Koss's books and records to make it appear that Sachdeva's fraudulent transfers were legitimate business transactions." (*Id.*)

Koss's restated financial statements, filed with the Commission on June 30, 2010, reflect Sachdeva's embezzlements for the fiscal years ended June 30, 2008 and June 30, 2009, and the periods ending September 30, 2009, December 31, 2009 and March 31, 2010. (*See* Koss Corporation's Form 10-K/A for the fiscal year ended June 30, 2009 ("2009 Form 10-K/A") (Ex. C))[3] The yearly amounts stolen were significant in relation to both sales and shareholder equity. For example, during the fiscal year ended June 30, 2009, Sachdeva stole approximately $8.5 million, while the company had total sales of $41.7 million and retained earnings of $17.1 million at year-end. (*Id.* at 4, 31-32)

Koss was the direct victim of Sachdeva's theft. Nonetheless, as alleged in the Commission's Complaint, Koss violated the federal securities laws in two important respects. First, during the time period of Sachdeva's fraud, Koss filed current, quarterly and annual reports with the Commission that included materially false financial statements, in violation of Section 13(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rules 12b-20, 13a-1, 13a-11 and 13a-13 thereunder. Koss failed to account for the embezzlement losses and thereby overstated Koss's net income, overstated assets and understated liabilities. Although Koss did not file restated financial statements for the fiscal years ended June 30, 2005 through June 30,

---

[3] Koss filed Form 10-K/A for the fiscal year ended June 30, 2009, including restated financial statements for fiscal year ended June 30, 2008, and Form 10-Q/A's for the periods ended September 30, 2009, December 31, 2009 and March 31, 2010.

3

2007, the cumulative effect of the "unauthorized transactions" on those years was taken as an $8.4 million reduction of beginning retained earnings for 2008 in Koss's Form 10-K/A. (*Id.* at 51)

Second, Koss violated the books and records and internal controls provisions of the securities laws. Section 13(b)(2)(A) of the Exchange Act requires issuers to make and keep books, records and accounts which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the issuer's assets. Section 13(b)(2)(B) of the Exchange Act requires issuers to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that, among other things, transactions are recorded as necessary to permit the preparation of financial statements in conformity with U.S. Generally Accepted Accounting Principles and to maintain accountability for the issuer's assets. Koss reported in its Form 10-K/A for the fiscal year ended June 30, 2009 that, "[t]he Company's internal control over financial reporting failed to timely detect and prevent the unauthorized transactions. . . . The Company's internal controls as of June 30, 2009 were not effective in that they failed to timely detect and prevent the circumvention of the internal controls and procedures relating to the unauthorized transactions." (*Id.* at 17)

## II. Koss's Remedial Efforts.

After discovering Sachdeva's embezzlement and related cover up, Koss undertook several remedial actions.[4] These included:

---

[4] Koss has publicly detailed its remedial efforts, including the implementation of improved internal controls over financial reporting, in its periodic and annual filings with the Commission. (*See, e.g.*, Koss Corporation's Form 10-K for the fiscal year ended June 30, 2010 ("2010 Form 10-K") at 21-22 (Ex. D); 2009 10-K/A at 3-5) In addition, in the summer of 2011, Koss and certain members of its Board of Directors settled a shareholder derivative lawsuit that had been filed against them in Milwaukee County Circuit Court. (*See In re Koss Shareholder Derivative* Litigation, Case No. 10-cv-002422 (Milwaukee County, Wis.)). In connection with the settlement, Koss and the directors executed a Stipulation of Settlement, which was filed with the Circuit Court and details remedial efforts undertaken by Koss. (*See*

4

(i) terminating Sachdeva, as well as two other accounting department employees who were involved in the embezzlement and cover up;

(ii) dismissing the public accounting firm that served as Koss's independent auditor during the time period of the fraud and appointing a new independent auditor;

(iii) hiring a new Chief Financial Officer to replace MJK, and strengthening the company's accounting staff by hiring an experienced Controller and Credit Manager;

(iv) changing its banking procedures and certain other internal policies and procedures;

(v) increasing documentation of the company's controls, improving the account reconciliation processes and implementing additional review and approval processes;

(vi) recruiting new personnel in the accounting department, which improved the segregation of duties regarding the initiation, approval, recording and reconciliation of cash transactions, including wire transfers;

(vii) increasing supervision over cash through improved monitoring, reconciling and reporting to management;

(viii) engaging a consulting firm to support management's review and implementation of an improved system of internal controls;

(ix) establishing the Chief Executive Officer, Chief Financial Officer and Vice President of Sales as the only approved signatories on the company's bank accounts; and

(x) reinforcing the company's Code of Conduct, Code of Ethics and Whistleblower Policy to all of its employees, officers and directors.

(*See* Stipulation of Settlement at 12-17; 2009 Form 10-K/A at 4-5) Koss's Board of Directors also passed a resolution providing that the offices of Chief Executive Officer and Chief Financial Officer must be held by separate individuals. (*See* Stipulation of Settlement at 12) In addition, Koss has disallowed the use of cashier's checks, requires all wire transfers to be initiated within the financial function and electronically approved by the Chief Executive Officer, and performs

---

*In re Koss Shareholder Derivative Litigation*, Case No. 10-cv-002422 (Milwaukee County, Wis.) Stipulation of Settlement ("Stipulation of Settlement") (Ex. E))

5

an enhanced review, reconciliation and reporting of cash activities. (*See* 2010 Form 10-K at 21-22) The company also no longer uses traveler's checks or a petty cash system to reimburse expenses to its employees. All reimbursements now run through normal controlled accounts payable channels. (*See id.*) Koss is also integrating a new computer system into their business to remediate the accounting, access and monitoring internal control issues. (*See id.* at 23) Finally, Koss's Audit Committee must engage an independent auditing firm to review its internal controls and submit a report regarding its findings at least once every three years. (*See* 2009 Form 10-K/A at 16)

### III. The Commission's Complaint Against Koss and MJK.

On September 24, 2011, the Commission filed the Complaint against Koss and MJK in this action. (Complaint (Doc. No. 1) ("Cmplt.")) In the Complaint, the Commission alleges that Sachdeva and Mulvaney were able to hide the substantial embezzlements in Koss's financial records in part because Koss and MJK did not adequately maintain internal controls to reasonably assure the accuracy and reliability of financial reporting. (*Id.* ¶ 3) The Complaint further alleges that, based on the fraudulent accounting books and records prepared by Sachdeva and Mulvaney, Koss prepared materially inaccurate audited financial statements and filed with the Commission materially inaccurate current, quarterly and annual reports. MJK certified the accuracy of the materially inaccurate financial statements filed by Koss with the Commission. (*Id.* ¶ 4)

As alleged in the Complaint, among other internal control deficiencies, Koss failed to segregate duties or assign someone outside of the accounting function to provide an independent check and balance on employees' integrity and to maintain a sufficiently strong control system (*Id.* ¶ 23); Koss failed to perform regular monthly reconciliations of its bank accounts or balance

6

sheets, and, to the extent they were performed, reconciliations were conducted by the same employees who initiated or recorded the transactions, enabling those persons to make modifications to the reconciliations to cover up fraudulent entries. (*Id.* ¶¶ 24-27); MJK did not review or verify the appropriateness of unusual reconciling items and did not review or authorize adjusting journal entries (*Id.* ¶ 28); MJK failed to conduct an adequate review of Koss's accounting in connection with his review of Koss's reporting certifications (*Id.* ¶ 31); Koss and MJK did not safeguard Koss's assets because they did not properly account for and approve the issuances of large cashier's checks and wire transfers and did not have anyone independently review petty cash transactions (*Id.* ¶¶ 32-33); and Koss and MJK failed to maintain adequate information systems and computer systems to lock the company's books and records at the end of a reporting period, review post-closing changes and to ensure the security of those records (*Id.* ¶¶ 34-36).

## IV.     The Proposed Consent Judgments.

On the same day that it filed its Complaint, the Commission also submitted to the Court two proposed consent judgments, one for each of the defendants. (*See* Exs. C & D to Mot. Entry of Final Jgmt., Doc. Nos. 3-3, 3-4) The proposed consent judgment against Koss provides that, without admitting or denying the Commission's allegations, Koss agrees to the entry of an order enjoining it from violations of Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11 and 13a-13 thereunder. It does not require payment of any form of monetary relief. Similarly, the proposed judgment against MJK provides that, without admitting or denying the Commission's allegations, MJK agrees to the entry of an order enjoining him from violations of Rule 13a-14 of the Exchange Act and from aiding and abetting violations of Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act and Rules 12b-20,

7

13a-1, 13a-11 and 13a-13 thereunder. The proposed consent judgment against MJK also requires him to reimburse Koss in the amount of $242,419 and to return 160,000 options granted to him in July 2009, pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002.

## DISCUSSION

The SEC respectfully submits that the proposed consent judgments are fair, reasonable adequate and in the public interest, and accordingly should be entered.

**I.     The Proposed Judgments Satisfy The Requirements For Injunctive Relief
        In Rule 65 Of The Federal Rules of Civil Procedure.**

Rule 65(d) provides that every order granting an injunction "must (A) state the reasons why it issued, (B) state its terms specifically; and (C) describe in reasonable detail—and not be referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). Here, the proposed consent judgments against Koss and MJK satisfy the requirements for injunctive relief.

As an initial matter, the proposed consent judgments are similar in form and substance to consent judgments in Commission enforcement actions entered by district courts in similar cases in this Circuit and elsewhere. (*See, e.g., SEC v. Wealth Management LLC et al.*, Case No. 09-cv-506 (E.D. Wis.), Final Judgment as to Defendant Simone O. Fevola dated March 4, 2010, Doc. No. 218; *SEC v. Merge Healthcare Inc. et al.*, Case No. 09-cv-1036 (E.D. Wis.), Final Judgment as to Defendant Merge Healthcare dated November 17, 2009, Doc. No. 10; *SEC v. Frohna*, Case No. 07-cv-702 (E.D. Wis.), Final Judgment as to Defendant Joseph A. Frohna dated August 7, 2007, Doc. No. 4)

In this case, the language of the Exchange Act provisions contained in the proposed injunctions against Koss and MJK provide sufficient detail regarding the requirements for compliance. While other Exchange Act provisions that are commonly the subject of

8

Commission injunctions, such as Section 10(b) and Rule 10b-5 thereunder, may proscribe a broad range of conduct, the books and records and internal controls provisions that are the subject of the injunctions against Koss and MJK, as written, are well-tailored to prescribe what an issuer such as Koss must do to comply. For example, Section 13(b)(2)(A) provides that the issuer must "make and keep books, records, and accounts which accurately and fairly reflect the transactions and dispositions of the assets of the issuer." 15 U.S.C. § 78m(b)(2)(A). Similarly, Section 13(b)(2)(B) specifies the requirements of the system of internal controls that must be devised and maintained by the issuer, including that the internal controls must assure that "transactions are executed in accordance with management's general or specific authorization" and that "access to assets is permitted only in accordance with management's general or specific authorization." 15 U.S.C. § 78m(b)(2)(B).

In the December 20, 2011 letter, the Court notes that the injunctions contained in the proposed consent judgments against Koss and MJK do not specify a mechanism or time frame for compliance. Under the circumstances of this case, the Commission determined that it was unnecessary to include undertakings regarding the mechanism or time frame for compliance in the consent judgments. As described above, before the consents were presented to this Court, Koss and MJK already had taken substantial remedial action to address the internal control failures that formed the basis for the Complaint. For example, the Complaint alleges that Koss failed to properly segregate duties or assign personnel outside of the accounting function to an provide independent check and balance. As part of their remedial efforts, Koss restructured the accounting function recruiting new personnel to facilitate better segregation of duties. Similarly, Koss has addressed the Commission's concerns regarding their outdated computerized accounting system by implementing a new system. MJK has been replaced as Chief Financial

Officer and the company has adopted a policy mandating that the offices of Chief Executive Officer and Chief Financial Officer must be held by separate individuals.

Likewise, there is no need to specify procedures regarding reporting, oversight or auditing of the remedial actions, as Koss has adopted procedures not just for compliance but also for oversight. Among other things, Koss has re-defined the composition of its Board of Directors to strengthen the requirements for independent directors and to require the appointment of a Lead Independent Director so long as the Chairman of the Board also serves as the Chief Enforcement Officer. As with all reporting companies, Koss is also required to make annual filings with the Commission on Form 10-K that include audited financial statements. And the auditors who worked for Koss during the time period of the fraud have been replaced. The proposed injunctions require Koss and MJK to maintain their compliance going forward, while allowing them some latitude to adjust their tactics for accomplishing those objectives as may be necessary in light of changes in their business, technological developments or other changes. It is reasonable for the Commission to allow Koss and MJK some flexibility to make such decisions within the specified limits of the statutory requirements.

Finally, in the December 20, 2011 letter, the Court questions whether the incorporation by reference of the defendants' consents might render the proposed judgments for injunctive relief impermissibly vague or difficult to enforce. However, the consents are tailored to achieve important public policy objectives, including ensuring that the defendants have entered into the consent judgments voluntarily and with full disclosure, and making clear that the parties intend to relinquish any rights to appeal the judgment on grounds not stated in the consents. Nonetheless, to the extent the Court continues to have concerns regarding inclusion of these provisions in a separate document incorporated by reference, rather than being stated in the final

judgment itself, the Commission would be amenable to submitting revised final judgments including the consent provisions.

## II.     MJK's Reimbursement Order Provides Fair, Reasonable And Adequate Relief Consistent With Section 304(a) of Sarbanes-Oxley.

The proposed consent judgment against MJK would also require him to reimburse Koss for $242,419 in cash and return 160,000 in stock options pursuant to Section 304 of Sarbanes-Oxley. Together with his previous voluntary reimbursement of $208,895, the total represents MJK's entire fiscal year 2008, 2009 and 2010 incentive bonuses.

The reimbursement provision in the proposed consent judgment for MJK is not based on the equitable remedy of disgorgement. Rather, reimbursement of bonuses and incentive compensation is a statutory remedy under Section 304(a) of Sarbanes-Oxley, which provides as follows:

> (a) Additional compensation prior to noncompliance with Commission financial reporting requirements. If an issuer is required to prepare an accounting restatement due to the material noncompliance of the issuer, as a result of misconduct, with any financial reporting requirement under the securities laws, the chief executive officer and chief financial officer of the issuer shall reimburse the issuer for—
>
> 1. any bonus or other incentive-based or equity-based compensation received by that person from the issuer during the 12-month period following the first public issuance or filing with the Commission (whichever first occurs) of the financial document embodying such financial reporting requirement; and
>
> 2. any profits realized from the sale of securities of the issuer during that 12-month period.

15 U.S.C. § 7243. *See also SEC v. Jenkins*, 718 F. Supp. 2d 1070, 1078 (D. Ariz. 2010). (noting that Section 304 utilizes the term "reimburse" rather than "disgorge," and thus "while 'disgorge' may have a specialized meaning in the context of a court's preexisting common law authority to order *equitable* disgorgement it has no application to the text of the statute here") (emphasis in original).

The statutory remedy under Section 304(a) differs from the equitable remedy of disgorgement in two key respects. First, disgorgement is meant to deprive wrongdoers of unjust enrichment and deter other violations. *See, e.g.*, *SEC v. First City Financial Corp.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989). In contrast, "Section 304 provides an incentive for CEOs and CFOs to be rigorous in their creation and certification of internal controls by requiring that they reimburse additional compensation received during periods of corporate non-compliance regardless of whether or not they were aware of the misconduct giving rise to the misstated financials." *Jenkins*, 718 F. Supp. 2d at 1077. Thus, Section 304 does not require that the officer's gains be ill-gotten in order to be reimbursed to the company. Second, while a court may determine who will receive disgorged funds based on principles in equity, Section 304(a) specifically directs that reimbursement be made to the issuer.

In this case, the Commission is not seeking equitable disgorgement in its settlements with Koss and MJK. Rather, the Commission determined that reimbursement by MJK under Section 304(a) would constitute more appropriate monetary relief. Koss restated its financial statements for the fiscal years ended June 30, 2008 and June 30, 2009, and the first quarter of fiscal year 2010. These restatements were required due to the material noncompliance by Koss, as a result of misconduct by Koss, Sachdeva and others, with financial reporting requirements under the securities laws. Thus, MJK, as Chief Executive Officer and Chief Financial Officer of Koss, is required to reimburse Koss for bonuses and incentive-based compensation he received during the 12-month periods following the original filings of the misstated financial statements. MJK received bonuses of $298,807 for 2008 (*see* Koss Corporation's October 8, 2008 Proxy Statement at 24 (Ex. F)), $115,913 for 2009 (*see* Koss Corporation's October 7, 2009 Proxy Statement at 13 (Ex. G)), and $36,594 for 2010 (*see* Koss Corporation's October 27, 2010 Proxy

Statement at 16 (Ex. H)), for a total of $451,314. Since MJK has already voluntarily reimbursed Koss for $208,895, the proposed consent judgment requires him to pay the difference of $242,419. (*See* Koss Corporation's October 5, 2011 Proxy Statement at 10 (Ex. I)) In addition, the proposed consent judgment requires MJK to forfeit 160,000 incentive-based stock options he received in July 2009. (*See id.* at 12)

If this case were to proceed to trial, the Commission would likely also seek to require MJK to reimburse Koss for $1 million in bonuses received by MJK after Koss filed its financial statements for the fiscal years ended June 30, 2005, June 30, 2006 and June 30, 2007, as well as additional incentive-based options received during that period. However, the company did not formally restate its financial statements for those periods. Thus, MJK might argue at trial that restatements were not "required" for those years within the meaning of Section 304(a). *See SEC v. Shanahan*, 2008 WL 5211909 (E.D. Mo. Dec. 12, 2008) (finding, as a matter of first impression, that a restatement must actually be filed with the Commission before a chief executive officer or chief financial officer is required to reimburse bonus or incentive compensation pursuant to Section 304(a)). The Commission disagrees with such an interpretation of Section 304(a) and submits that it would not be supported by a plain reading of the statute. Nevertheless, the Commission considered the possibility that a court might find otherwise in determining to forego reimbursement for the earlier years in the instant settlement.

In addition, the Commission considered the fact that MJK and his family own in excess of 70% of the outstanding shares of Koss stock. Given that Sachdeva's fraud had the effect of reducing the company's earnings during the relevant period, MJK arguably suffered harm as a result of his own malfeasance, as he might have received larger bonuses and greater incentive compensation if he had prevented all or part of Sachdeva's misconduct. The fact that MJK

13

arguably was harmed as a result of his misconduct also supports the conclusion that reimbursement is a more appropriate remedy here than equitable disgorgement.

Accordingly, the Commission respectfully submits that the reimbursement order contained in the proposed consent judgment against MJK constitutes fair, adequate and relief under Section 304 of Sarbanes-Oxley.

### III.     The Proposed Consent Judgments Would Constitute Final Judgments.

The proposed consent judgments against Koss and MJK would properly be considered final judgments within the meaning of the Federal Rules of Civil Procedure.

Each of the proposed consent judgments provides that "[t]here being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice" and that "this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Order." (Mot. Entry of Final Jgmt., Ex. C, Parts IV and V, Doc. No. 3-3; Ex. D, Parts VII and VIII, Doc. No. 3-4) Similarly, the consents for each of Koss and MJK each contain a provision stating that "Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Order." (Mot. Entry of Final Jgmt., Ex. A ¶ 4, Doc. No. 3-1; Ex. B ¶ 5, Doc. No. 3-2)  Together, these provisions make clear that the parties intend the proposed consent judgments, upon entry by the Court, to be treated as final judgments.  Nonetheless, the Court has raised the concern that the proposed consent judgments would not be final judgments because they do not expressly state the disposition of the claims against the parties.

"The test for finality is whether the district court has finished with the case." *Shapo v. Engle*, 463 F.3d 461, 463 (7th Cir. 2006); *see also Chase Manhattan Mortgate Corp. v. Moore*, 446 F.3d 725, 726 (7th Cir. 2006) ("The test [for finality] is not the adequacy of the judgment

14

but whether the district court has finished with the case."); *Borrero v. City of Chicago*, 456 F.3d 698, 700 (7th Cir. 2006) (whether judgment is final "just means . . . if the district judge is finished with the case"). When determining the finality of district court judgments, the Seventh Circuit looks to the language of the judgment: "If the language used is calculated to conclude all the claims before the district court, the judgment is final." *Munson Transp., Inc. v. Hajjar*, 148 F.3d 711, 714 (7th Cir. 1998); *cf. Kerr-McGee Chemical Corp. v. Lefton Iron & Metal Co.*, 570 F.3d 856, 857 (7th Cir. 2009) (finding that judgment was not final or appealable where the language of the order indicated that the district judge recognized that a question regarding damages was unresolved and the judge would tackle it upon proper motion by the parties). Thus, so long as the language of the judgment makes clear that the district court is finished with the case, there is no requirement that a judgment contain language specifically disposing of the claims against the parties – *e.g.*, dismissing the complaint or awarding judgment in favor in favor of one party or another – in order for the judgment to be rendered final. Here, the terms and amounts of all relief against Koss and MJK have been agreed upon by the parties and the proposed consent judgments make clear that there are no remaining issues requiring the Court's attention. Nothing further is required to render the judgments final.

Furthermore, the fact that the proposed consent judgments provide that the Court shall retain jurisdiction for the purpose of enforcing the judgments does not negate their finality. It is well-established that when a court issues an injunction, it automatically retains jurisdiction to enforce it. *See, e.g., United States v. City of Chicago*, 870 F.2d 1256, 1257 (7th Cir. 1989) (noting that district court automatically retained jurisdiction to enforce consent decree); *United States v. Fisher*, 864 F.2d 434, 436 (7th Cir. 1988) (noting that provision in consent decree continuing district court's jurisdiction in order to ensure compliance was "superfluous" because

"when a court issues an injunction, it automatically retains jurisdiction to enforce it"); *McCall-Bey v. Franzen*, 777 F.2d 1178, 1183 (7th Cir. 1985) ("When an equity case ends in a permanent injunction, the trial court, with or without an explicit reservation of jurisdiction, retains jurisdiction to enforce the injunction, as by contempt proceedings."); *Norman v. McDonald*, 930 F. Supp. 1219, 1226 (N.D. Ill. 1996) (finding that, even if jurisdiction had not been expressly retained, the district court still would have had inherent power to enforce injunctive relief provision of consent decree) Thus, the provisions in the proposed consent judgments regarding retention of jurisdiction merely make explicit the retention of jurisdiction inherent in the Court's equitable power.

Finally, treatment of the proposed consent judgments as final judgments is consistent with *Shapo v. Engle*, 463 F.3d 641, and *Blue Cross and Blue Shield Assoc. v. American Express Co.*, 467 F.3d 634 (7th Cir. 2006). In *Shapo*, the Seventh Circuit noted that judgments imposing injunctive relief constitute exceptions to the general rule that a district court cannot dismiss a suit with prejudice yet retain jurisdiction to enforce the parties' settlement that led to the dismissal with prejudice. *See Shapo*, 463 F.3d at 643. However, while parties may structure a settlement so as to dismiss the claims with prejudice with the court nonetheless retaining jurisdiction to enforce injunctive relief, *Shapo* does not require them to do so. Here, the parties' decision not to dismiss the Complaint in conjunction with their settlement falls within the scope of the reasonable exercise of agency judgment entitled to substantial deference by a reviewing court. *See Randolph*, 736 F.2d at 529. The approach permits the Commission to serve the public interest by informing the public regarding the facts that led it to pursue this action.

In *Blue Cross*, the Seventh Circuit addressed a jurisdictional problem that arose because the judgment initially entered by the district court was not an injunction within the meaning of

16

Rule 65(d) of the Federal Rules of Civil Procedure. *See Blue Cross*, 467 F.3d at 636. The district court sought to remedy the problem by revising the order pursuant to Rule 60(b) of the Federal Rules of Civil Procedure to resemble a consent decree and provide that the district court retained jurisdiction for the purpose of enforcing the settlement agreement. *Id*. The Seventh Circuit found that even though the revised judgment still did not satisfy the requirements for an injunction under Rule 65(d), the district court was entitled to conduct civil contempt proceedings to enforce the settlement. *Id*. at 638. Nothing in *Blue Cross* suggests that this Court should not permit the parties in this case to enter into a consent judgment with injunctive relief without dismissing the claims and while retaining jurisdiction to enforce the injunction.[5]

## CONCLUSION

For the foregoing reasons, the Commission respectfully requests that the Court enter the proposed consent judgments.

Dated: January 24, 2012

Respectfully submitted,

s/ Andrea R. Wood

Andrea R. Wood (IL Bar # 6256883)
James A. Davidson (IL Bar # 6206786)
Attorneys for Plaintiff
U.S. Securities and Exchange Commission
175 W. Jackson Blvd., Suite 900
Chicago, Illinois 60604
Telephone: (312) 353-7390
Fax: (312) 353-7398
E-mail: woodar@sec.gov
E-mail: davidsonj@sec.gov

---

[5] The Commission will respond to any further questions regarding the proposed settlements as the Court may desire.

# CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing **Plaintiff Securities and Exchange Commission's Memorandum in Response to Questions Posed by the Court Regarding Proposed Settlement** using the ECF System for the Eastern District of Wisconsin.

Additionally, I hereby certify that I sent the filing by electronic mail and by United States Postal Service to the following:

Defendant Koss Corporation
c/o Alan J. Berkeley
John E. Garda
K&L Gates
1601 K Street, NW
Washington, DC 20006-1600
Telephone: (202) 778-9000
Fax: (202) 778-9100
Email: alan.berkeley@klgates.com, john.garda@klgates.com

Defendant Michael J. Koss
c/o Alan J. Berkeley
John E. Garda
K&L Gates
1601 K Street, NW
Washington, DC 20006-1600
Telephone: (202) 778-9000
Fax: (202) 778-9100
Email: alan.berkeley@klgates.com, john.garda@klgates.com

Dated: January 24, 2011                         Respectfully submitted,

                                                s/ Andrea R. Wood